UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 10-80883-CIV-MARRA
Consolidated Case: Lead Action

MAGALY PINARES, et al.,

 Plaintiffs,

vs.

UNITED TECHNOLOGIES CORPORATION,
Pratt & Whitney Group, a Connecticut Corporation,

Defendant.
_____/

CASE No.: 14-CV-81385-MARRA

JOSELYN SANTIAGO and STEVE SANTIAGO,
Co-Personal Representatives of the Estate of
CYNTHIA SANTIAGO,

Plaintiffs,

vs.

UNITED TECHNOLOGIES CORPORATION
Pratt & Whitney Group, a Connecticut corporation,

Defendant.
_____/

## **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court upon Defendant's Motion for Summary Judgment (DE 328). The Motion is fully briefed and ripe for review. The Court held an oral argument. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

Plaintiffs' claims arise from alleged environmental contamination to their property in an unincorporated area of Palm Beach County that is sometimes referred to as the "Acreage." Plaintiffs' property is located about ten miles from Defendant Pratt & Whitney's ("Defendant") facility. Beginning in 2009, the Acreage was the subject of scrutiny because of questions of whether people in the area were being diagnosed with brain cancer at an unexpected rate.

Cynthia Santiago was diagnosed with a brain tumor in November 2009. Plaintiffs Joselyn and Steve Santiago ("Plaintiffs") are the personal representatives of the estate of their daughter, Cynthia, who died of an ependymoma at the age of 20. Plaintiffs filed the instant suit against Pratt & Whitney on November 7, 2014, several months after Cynthia turned 18. The wrongful death claim alleges that the disease which caused Cynthia's death was the result of her exposure to thorium-230, which Plaintiffs assert was caused by Defendants' reckless remediation of soil containing thorium and other radioactive materials. The wrongful death claim is grounded in negligence, trespass and a "nuclear incident" under the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011, et seq.

Defendant moves for summary judgment on the basis that Plaintiffs' claims are subject to a four-year statute of limitations and therefore are time barred.[1] Plaintiffs contend that various tolling exceptions under Florida law apply. Plaintiffs also contend that the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") sets forth a Federally Required Commencement Date ("FRCD") which mandates that the statute of limitations begins to

---

[1] Defendant also moves for summary judgment on the merits of the case. Because the Court agrees that the case is time-barred, it is unnecessary to address the case on the merits.

run from the date the claimant knew or reasonably should have known that her injury was caused or contributed to by a contaminant or the day that she turned 18.

## II. Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

3

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

Under Florida law, claims for trespass, nuisance and negligence are subject to a four-year statute of limitations. Florida Statute § 95.11(3); see Anderson v. Epstein, 202 So. 3d 893, 899 (Fla. Dist. Ct. App. 2016) (claims for trespass, nuisance, and negligence are subject to a four-year statute of limitations). Generally, Florida courts applying a statute of limitations follow the default rule that "[a] cause of action accrues when the last element constituting the cause of action occurs." D.H. v. Adept Cmty. Servs., Inc., 217 So. 3d 1072, 1078 (Fla. Dist. Ct. App. 2017). Moreover, "the last element constituting a cause of action for negligence is legally cognizable injury to the plaintiff." Id. at 1079.

To resolve the statute of limitations issue, the Court will first discuss the various statutes at play in a case concerning injury from radioactive materials. The PAA, passed by Congress in 1957, had "the dual purpose of protecting the public and encouraging the development of the atomic energy industry." Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 65 (1978) (internal quotation marks, brackets and eclipses omitted). To address private industries' concerns about liability, the PAA " 1) established a limit on the aggregate liability of those who

wished to undertake activities involving the handling of nuclear material, 2) channeled public liability resulting from nuclear incidents to the federal government and 3) provided that all public liability claims above the amount of required private insurance would be indemnified by the federal government." Roberts v. Florida Power & Light Co., 146 F.3d 1305, 1306 (11th Cir. 1998).

In 1988, Congress amended the PAA to mandate that all nuclear accidents be litigated in federal courts. 42 U.S.C. § 2210(n)(2) (creating federal jurisdiction and allowing removal to federal court for cases "resulting from a nuclear incident"); id. § 2014(q) (defining "nuclear incident" as an injury "resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special, nuclear, or byproduct material"); Roberts, 146 F.3d at 1306 (amendments served to create an "exclusive federal cause of action for radiation injury"). Federal courts, however, apply the substantive law of the state in which the nuclear incident occurred unless to do so is inconsistent with the PAA. 42 U.S.C. § 2014(hh).

In 1980, Congress passed the CERCLA "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." Burlington N. & Santa Fe Ry. Co. v. United States, 556 U.S. 599, 602 (2009) (internal quotation marks omitted). CERCLA provides "a federal cause of action to recover costs of cleanup from culpable entities but not a federal cause of action for personal injury or property damage." CTS Corp. v. Waldburger, 134 S. Ct. 2175, 2180 (2014). In 1986, Congress amended CERCLA to include the FRCD provision that "pre-empts statutes of limitations applicable to state-law tort actions" "for personal injury or property damage arising from the release of a hazardous substance, pollutant, or contaminant into the environment." Id. at 2180-81. Under

5

CERCLA, the FRCD "means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned" or the date the plaintiff turns 18. 42 U.S.C. § 9658(b)(4). Notably, this provision of CERCLA only applies to claims "brought under state law." Halbrook v. Mallinckrodt, LLC, 888 F.3d 971, 977 (8th Cir. 2018) (citing § 9658(a)(1)).[2] The PAA does not set a limitations period for public liability actions that do not rise to the level of an extraordinary nuclear occurrence ("ENO"), but rather applies the limitations period of the state where the nuclear incident occurred.[3] Corcoran v. New York Power Auth., 202 F.3d 530, 542 (2d Cir. 1999).

The question before the Court is whether the PAA or CERCLA statute of limitations apply to Plaintiffs' claims. If the PAA applies, Florida's four year statute of limitations applies and Plaintiffs' claim is time barred, unless any of Florida's tolling exceptions apply. If the CERCLA applies, the claim is timely because Cynthia turned 18 a few months before filing suit. To make this determination, the Court must address whether Plaintiffs' claims are preempted by the PAA.

The PAA sets forth the requirements for holding regulated users of radioactive materials liable for nuclear incidents. The PAA preempts state law claims that are based on the release of radioactive materials. Nieman v. NLO, Inc., 108 F.3d 1546, 1553 (6th Cir. 1997). Plaintiffs "may

---

[2] "In the case of any action brought *under State law* for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute." 42 U.S.C.A. § 9658 (emphasis added).

[3] There is no dispute that Plaintiffs' claims do not arise out of an ENO.

sue under the [PAA], as amended, or not at all." Id. The PAA defines any "public liability action," as any suit "arising out of or resulting from a nuclear incident." 42 U.S.C. § 2014(w). A nuclear incident is defined as any occurrence causing "bodily injury" by, among other things, nuclear "source" material, which includes thorium. Id. at §§ 2014(q), (z). Section 2210(n)(2) provides that federal jurisdiction over such actions is "original jurisdiction without regard to the citizenship of any party or the amount in controversy." Id. at § 2210(n)(2).

Several courts have held that the PAA is the only method to bring a state tort claim for a nuclear incident. See Halbrook, 888 F.3d at 977 ("Congress created a federal cause of action for public-liability claims concerning nuclear incidents."); Nieman, 108 F.3d at 1553 ("we hold that the Price–Anderson Act preempts [the plaintiff's] state law claims; the state law claims cannot stand as separate causes of action"); O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1099 (7th Cir. 1994) (citing In re TMI Cases Consolidated II, 940 F.2d 832, 854 (3d Cir. 1991) ("no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments [to the PAA] or it is not compensable at all."). Given that Plaintiffs allege bodily injury from source material, their state law claims are preempted by federal law. See Roberts, 146 F.3d at 1308 ("state regulation of nuclear safety, through either legislation or negligence actions, is preempted by federal law." ) (quoting O'Conner, 13 F.3d at 1105); In re TMI Litig. Cases Consol. II, 940 F.2d at 858 ("two Supreme Court cases indicate that the duty the defendants owe the plaintiffs in tort is dictated by federal law.")

With respect to the appropriate statute of limitations, the Court finds the Halbrook case instructive. Like in the instant case, the plaintiffs sought to avoid the application of state law

limitations period and to invoke instead the CERCLA FRCD. Halbrook, 888 F.3d at 977. The Halbrook Court held that "CERCLA's claim-accrual provision applies only to claims 'brought under State law.'" Id. The Halbrook Court, relying on section 2041(h)(h), explained that "Congress created a federal cause of action for public-liability claims concerning nuclear incident" and "spoke clearly" when stating that these types of claims "shall be deemed" to arise under federal law. Id. Based on that, the court held that CERCLA was inapplicable to the plaintiffs' claims. Id. at 378. The Court finds Halbrook persuasive and rejects Plaintiffs' request to apply CERCLA in determining the statute of limitations.

The Court will, however, address Plaintiffs' arguments to the contrary. Plaintiffs criticize the Halbrook case on the basis that it did not discuss the United States Supreme Court case CTS Corp. or the Ninth Circuit's O'Connor case. CTS Corp., however, did not address the PAA or whether CERCLA applies to claims under federal law. Instead, CTS Corp. addressed whether CERCLA applies to statutes of repose in addition to statutes of limitation, an issue not present in the case here. See generally CTS Corp., With respect to the O'Connor case, the Ninth Circuit expressly did not reach the question of whether CERCLA's FRCD impacts the statute of limitations applicable to the PAA. O'Connor v. Boeing N. Am., Inc., 311 F.3d 1139, 1148 n.4 (9th Cir. 2002). Instead, the court noted that the district court did not reach the PAA claims and remanded the case to permit the district court to address those claims. Id.

Plaintiff also rely upon Cook v. Rockwell International Corp., 790 F.3d 1088 (10th Cir. 2015).[4] In Cook, the Tenth Circuit held that the PAA does not preempt state law nuisance claims. At trial, the Cook plaintiffs prevailed on their PAA and state law public nuisance claims. Id. at

---
[4] This opinion was authored by now United States Supreme Court Justice Gorsuch.

1090. On appeal, the Tenth Circuit remanded the case based on the jury instructions for the PAA claim. Id. at 1090-91. At that point, the plaintiffs abandoned their PAA claim and sought judgment on the state nuisance claim alone. Id. at 1091. The district court, however, ruled that the PAA preempted the state law claims, even where the plaintiffs failed to prove a "nuclear incident." Id. at 1092. In analyzing the history and text of the PAA, the Tenth Circuit found that Congress anticipated the existence of "lesser nuclear occurrences" that would not constitute a "nuclear incident." Id. at 1095. In those cases, the Tenth Circuit held that a plaintiff can still recover under state law for a lesser nuclear occurrence. Id. at 1096.

Plaintiffs read Cook as supporting its position that the PAA only preempts state law claims to the extent those claims conflict with the standards for finding liability under the PAA. (DE 345 at 23.) The Court disagrees. First, Cook only addresses injuries *not* cognizable under the PAA, such as reduced property values as the result of radioactive waste on property that neighbored a nuclear plant. Id. at 1090; see also 42 U.S.C. § 2014(q) (nuclear incident includes a "loss of or damage to property, or loss of use of property"). Here, Plaintiffs claims rest on bodily injury claims, which falls squarely under the PAA. 42 U.S.C. § 2014(q). Second, as explained by Judge Perry in Dailey v. Bridgeton Landfill, LLC, 299 F. Supp. 3d 1090 (E.D. Mo. 2017), Cook did not hold that a plaintiff can pursue both a PAA and state law claim simultaneously:

> I do not agree that Cook proposes that both such claims can proceed simultaneously based on the same claim. The Cook court stated that federal claims for larger nuclear incidents coexist with state law claims for lesser nuclear occurrences. But the court was not discussing such claims coexisting in the same suit based on the same occurrence—only that both types of claims are available forms of relief, depending on the nature of the occurrence alleged in a case. . . . Allowing state-law claims to proceed simultaneously with a PAA claim would create an obstacle to the accomplishment of the purpose and objective of the PAA. There is an irreconcilable

conflict in allowing both the state-law and PAA claims to proceed simultaneously. Id. at 1098 (internal citations, quotation marks, emphasis omitted). For these reasons, the Court finds that Cook does not alter this Court's preemption holding.[5]

Because the PAA preempts Plaintiffs' state law claims, the PAA controls on the issue of statute of limitations, not the CERCLA. Thus, the Court must next turn to Plaintiffs' contention that Florida state law tolling doctrines preclude a strict application of the Florida four-year statute of limitations, which began running on Plaintiffs' claims from the date when Cynthia was injured in November of 2009.

With respect to the delayed discovery doctrine, the Court finds this doctrine inapplicable. "The 'delayed discovery' doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." Raie v. Cheminova, Inc., 336 F.3d 1278, 1280 (11th Cir. 2003) (quoting Hearndon v. Graham, 767 So. 2d 1179, 1184 (Fla. 2000)). The delayed discovery rule, however, is only available for claims of fraud, products liability, professional and medical malpractice, and intentional torts based on abuse. Id. (citing Davis v. Monahan, 832 So.2d 708, 710 (Fla.2002)). While Plaintiffs rely on the Hearndon case, the Court finds this case inapplicable. Hearndon created an exception to the delayed discovery doctrine in cases involving the sexual abuse of

---

[5] The Court rejects Plaintiffs' argument that the PAA does not apply if the defendant is not a licensed user of radioactive materials or does not have an indemnity agreement related to its use of radioactive materials. See Cotromano v. United Techs. Corp., 7 F. Supp. 3d 1253, 1257-58 (S.D. Fla. 2014) (Ryskamp, J.) (citing Acuna v. Brown & Root, Inc., 200 F.3d 335 (5th Cir. 2000)); see also Estate of Ware v. Hosp. of the Univ. of Pennsylvania, 871 F.3d 273, 283 (3d Cir. 2017) ("We are unpersuaded that an indemnification agreement is necessary to trigger the Act's applicability."); cert. denied sub nom., Boyer v. Hosp. of the Univ. of Pennsylvania, 138 S. Ct. 2018 (2018).

children. Hearndon, 767 So. 2d at 1186. That exception does not apply to the claims asserted here.

Nor does equitable tolling apply. Florida law does not permit the application of this doctrine based on circumstances not listed in Florida Statute §95.051.[6] See, e.g., Razor Capital,

---

[6] (1) The running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36 is tolled by:
    (a) Absence from the state of the person to be sued.
    (b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued.
    (c) Concealment in the state of the person to be sued so that process cannot be served on him or her.
    (d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
    (e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.
    (f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.
    (g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.
    (h) The period of an intervening bankruptcy tolls the expiration period of a tax certificate under s. 197.482 and any proceeding or process under chapter 197.
    (i) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

    Paragraphs (a)-(c) shall not apply if service of process or service by publication can be made in a manner sufficient to confer jurisdiction to grant the relief sought. This section shall not be construed to limit the ability of any person to initiate an action within 30 days after the lifting of an automatic stay issued in a bankruptcy action as is provided in 11 U.S.C. s. 108©.

    (2) A disability or other reason does not toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law.

Florida Statute § 95.051.

LLC v. CMAX Fin. LLC, No. 17-80388-CIV, 2017 WL 3481761, at *3 (S.D. Fla. Aug. 14, 2017); Baez v. Root, 13-cv-81158, 2014 WL 1414433, at * 3 (S.D. Fla. Apr. 11, 2014); In re Chiquita Brands Int'l, Inc., 690 F. Supp. 2d 1296, 1315 n.10 (S.D. Fla. 2010 ). Instead, the Court finds that equitable tolling is limited to administrative actions. Baez, 2014 WL 1414433, at * 3 (citing HCA Health Servs. of Fla., Inc. v. Hillman , 906 So. 2d 1094, 1098-99 (Fla. Dist. Ct. App. 2004); Lopez v. Geico Cas. Co., 968 F. Supp. 2d 1202, 1206 (S.D. Fla. 2013); Watson v. Paul Revere Life Ins. Co., No. 11–21492–CIV–KMM, 2011 WL 5025120, at *4 (S.D. Fla. Oct. 21, 2011); Socas v. Northwestern Mut. Life Ins. Co., 829 F. Supp. 2d 1262 (S.D. Fla. 2011); Pierson v. Orlando Reg'l Healthcare Sys., Inc., No. 6:08–cv–466–Orl–28GJK, 2010 WL 1408391, at *15 (M.D. Fla. 2010)).

With respect to the doctrine of equitable estoppel, a plaintiff must show that there has been: "(1) an affirmative misrepresentation of a material fact by Defendant, which is contrary to a later asserted representation or position; (2) actual and reasonable reliance on Defendant's misrepresentation or misconduct; and (3) a detrimental change in Plaintiff's position, due to this reliance." Spagnoli v. Medtronic Minimed, Inc., No. 07-22871-CIV, 2009 WL 10669108, at *6 (S.D. Fla. Mar. 10, 2009) (citing Major League Baseball v. Morsani, 790 So. 2d 1071, 1076 (Fla. 2001); Mobile Medical Industries v. Quinn, 985 So. 2d 33, 35 (Fla. Dist. Ct. App. 2008); Castro v. East Pass Enterprises, Inc., 881 So. 2d 699, 700 (Fla. Dist. Ct. App. 2004)). In essence, "[e]quitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position." Morsani, 790 So. 2d at 1076. Although Plaintiffs reference this doctrine in their brief (Resp. at 10), their brief does not provide citations to any evidence regarding these elements.

12

Next, the Court addresses Plaintiffs' reliance on the continuing tort doctrine. A continuing tort, for purposes of extending the limitations period, is established by continual tortious acts, not by continued harmful effects from the original completed act. Suarez v. City of Tampa, 987 So. 2d 681, 686 (Fla. Dist. Ct. App. 2008). Here, there are no allegations that Defendant continually contaminated Plaintiffs' property or contaminated it after 2009.[7] Even if there were such allegations, the tort was completed when Cynthia allegedly contracted cancer from the nuclear contamination. Thus, there would not be a continuing invasion of Cynthia's rights after she allegedly contracted cancer. See Chakra 5, Inc. v. City of Miami Beach, — So. 3d —, 2018 WL 3999130, at *6 (Fla. Dist. Ct. App. Aug. 22, 2018) ("[a] continuing tort is thus perhaps best understood as a tort in which the wrong cannot be described as a discrete event.") As for Plaintiffs reliance upon City of Miami v. Brooks, 70 So. 2d 306 (Fla. 1954), the Court notes that Brooks does not address the continuing tort doctrine. Instead, it discusses the delayed discovery doctrine.[8]

Lastly, the Court rejects Plaintiffs' reliance on Florida Statute § 95.11(10).[9] The statute

---

[7] For this reason, the Court rejects Plaintiffs' reliance on California Fin., LLC v. Perdido Land Dev. Co., 303 F. Supp. 3d 1306, 1310 (M.D. Fla. 2017) ("the statute of limitations in environmental contexts where there is a continuing invasion of rights does not begin to run until the wrongful invasion of rights that constitutes the violation ceases.").

[8] In fact, even the Florida Supreme Court has cited the Brooks case as an example of delayed discovery. See Hearndon, 767 So. 2d at 1184.

[9] For intentional torts resulting in death from acts described in s. 782.04 or s. 782.07.--Notwithstanding paragraph (4)(d), an action for wrongful death seeking damages authorized under s. 768.21 brought against a natural person for an intentional tort resulting in death from acts described in s. 782.04 or s. 782.07 may be commenced at any time. This subsection shall not be construed to require an arrest, the filing of formal criminal charges, or a conviction for a violation of s. 782.04 or s. 782.07 as a condition for filing a civil action. Florida Statute § 95.11(10).

serves to extend the statute of limitations for wrongful death claims based on the criminal acts of murder or manslaughter. These crimes are not at issue in this case.

For all these reasons, the Court finds that this case is barred by the statute of limitations.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant's Motion for Summary Judgment (DE 328) is **GRANTED**.

2) The following motions are denied as moot: DE 323, 324, 325, 326, 327, 330, 331, 332, 333, 349, 351.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 14th day of November, 2018.

_____
KENNETH A. MARRA
United States District Judge